IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KAREN FUERST, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION FILE NO. |
| | : | 1:20-cv-02027-MHC |
| THE HOUSING AUTHORITY | : | |
| OF THE CITY OF ATLANTA, | : | |
| GEORGIA, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

COMES NOW The Housing Authority of the City of Atlanta, Georgia, ("AH[1]" or the "Defendant") and respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Karen Fuerst's ("Plaintiff" or "Ms. Fuerst") Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and shows the Court as follows:

---

[1] While Plaintiff refers to AHA in her Complaint, AH recently underwent rebranding and now may be referred to simply as "Atlanta Housing." As such, it refers to itself for purposes of its Motion as "AH." However, when specifically quoting Plaintiff's Complaint in this document, it will adhere to Plaintiff's terminology.

- 1 -

## I.     Introduction

This is the classic tale of a subordinate employee's desire to dictate the terms of her employment to the Chief Executive Officer. Spanning 194 numbered paragraphs and 86 pages, Ms. Fuerst's Complaint [Doc. 4] attempts to paint a picture of a megalomaniacal executive bent on ruining Ms. Fuerst's past good works by ███████████████████████████████████████████████. However, unlike most whistleblower allegations, Ms. Fuerst does not claim that AH's then President and Chief Executive Officer, Catherine Buell ("Ms. Buell"), had any underlying, corrupt self-interest[2] in her desire to renegotiate the contract.

The reason for this is simple: Ms. Fuerst has no evidence. Thus, instead of alleging actual corruption, Ms. Fuerst has invoked the infrequently litigated National Defense Authorization Act, 41 U.S.C. § 4712 ("NDAA"). This approach allows Ms. Fuerst to allege that she had a "reasonable belief" that she opposed some sort of amorphous "gross mismanagement" of a government contract in her attempt to state a claim. However, as will be discussed below, courts that have interpreted this

---

[2]   Ms. Fuerst alleges that "Buell appeared to have a personal agenda contrary to AHA's mission and deliberately avoided seeking counsel from Fuerst of the LIHTC and affordable housing development processes, despite Fuerst's depth of experience in these areas." (Compl. ¶ 96). Curiously, Ms. Fuerst fails to allege her belief as to why Ms. Buell had this "personal agenda."

section of the NDAA and similar statutes have concluded that mere differences of opinion do not rise to the level of protected disclosures. For this, and other reasons described below, AH respectfully requests that Ms. Fuerst's Complaint be dismissed in its entirety, with prejudice.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556). At the motion to dismiss stage, "all well-pleaded facts

are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). Nevertheless the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

### III. Ms. Fuerst's Allegations

Ms. Fuerst began working for AH in October 2010. (Compl. ¶ 1). Ms. Fuerst performed various roles for AH during her tenure, but eventually rose to the level of Senior Vice President and Deputy General Counsel for Real Estate. (Compl. ¶¶ 1-3). Ms. Fuerst emphasizes that she worked on AH's Investment Committee, where she and the other members of the Committee, "shape[d] and approved[d] AH policies and approve[d] – and authorize[d] submittal to AH's Board of Commissioners for approval of – policy changes and major expenditures of AH's public funding. (Comp. ¶ 2). Importantly, at no point in the Complaint does Ms. Fuerst allege that she actually had any specific decision making power over *any* contract, much less AH's contract with Integral.

In or around 2016, Ms. Buell became Chief Executive Officer of AH. (Compl. ¶ 4). Against Ms. Fuerst's recommendation, Ms. Buell began a review of all AH real estate holdings and contracts to determine their effects on AH and determined ███████████████████████████████████████████████████████████████████████████████████████. (Compl. ¶¶ 4, 6). Ms. Fuerst disagreed with this decision and frequently opined that ████████████████████████████████████████████████████████████████████. (Compl. ¶ 9). Ms. Fuerst believed that █████████████████████████████████████████████████████████████████████████████████████████. (Compl. ¶ 6). She apparently believed this, despite the fact that Ms. Fuerst herself worked on amendments to previous agreements with Integral in 2011, which she now claims resulted in AH "end[ing] up in a substantially better economic position than it had

---

[3] Indeed, this decision has resulted in currently pending litigation between Integral and AH (Grady Redevelopment, LLC et al. v. The Housing Authority of the City of Atlanta, Georgia, Civil Action No. 2017-CV-298975, Superior Court of Fulton County, Georgia. This has prompted Ms. Fuerst to attempt to file her Complaint under seal [Doc. 2], because she recognizes that the basis of her complaint lies in attorney-client privileged communications.

been in when negotiations of those terms previously... had broken off prior to Fuerst's arrival at AHA." (See generally, Compl. ¶¶ 27-31).

Ms. Fuerst continued complaining about Ms. Buell's attempt to renegotiate the contracts, just like AH and Ms. Fuerst had done in 2011.  Eventually, AH launched an inquiry into Ms. Fuerst and her involvement in those amendments. (Compl. ¶¶ 33-34.)  At that point, Ms. Fuerst began complaining to AH's Human Resources Director about Ms. Buell's decisions, and the fact that those decisions ran counter to Ms. Fuerst's advice.  (Compl. ¶ 36-37).  Ms. Fuerst also complained about being "walled off[4]" from working on matters that she had worked on in the past[5]. (Compl. ¶ 38).  Ms. Fuest makes this allegation, although she knows that nothing

---

[4]  Ms. Fuerst makes a number of allegations as to being "walled off" from various decisions, "no longer invited to senior leadership team meetings", and even that AHA's website no longer recognized her as a member of the "Senior Leadership Team."  AH contends that, even if true (which they are not), none of these perceived slights would amount to an adverse employment action.

[5] Contradictorily, Ms. Fuerst appears to claim that she wanted to involve herself in *more decisions*, which would require *more work*.  Yet she claims that, at the same time, the "stress she experienced from working long hours, particularly in November and December 2016" began to cause her "both physical and mental health symptoms."  (Compl. ¶¶ 126-127). She goes on to allege that she requested a reasonable accommodation under the Americans with Disabilities Act ("ADA") in the form of a reduction of hours.  Id.  Curiously, Ms. Fuerst has not included a claim for disability discrimination or retaliation in her Complaint.  More curiously, Ms. Fuerst wanted a reduction in hours, but later claimed that she "perceived no need for additional personnel."  (Compl. ¶ 133).

required AH and/or Ms. Buell to ask for, or accept, Ms. Fuerst's counsel in the first place.  Ms. Fuerst became so frustrated that she made efforts to surreptitiously listen in on conference calls to which she was not invited, and went on to voice her disagreement with Ms. Buell to a wide variety of individuals.  (Compl. ¶ 40).

Ms. Fuerst finally alleges that AH terminated her employment in retaliation for her alleged "protected disclosures" in opposition to ███████████ ███████████████████████████.  (Compl. ¶¶ 42-43).  She also claims that AH failed to investigate her complaints against Ms. Buell.  Id.

## IV. Argument and Citation of Authority

**A.  Plaintiff fails to state a claim under the National Defense Authorization Act because her opinion of the efficacy of AH's/Ms. Buell's actions was not a protected disclosure.**

As Plaintiff notes in her Complaint, the NDAA states that,

> "An employee of a... grantee... may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant[6], a substantial and

---

[6] Ms. Fuerst references various contracts and grants throughout her Complaint. However, she never states specifically which contract or grant she believes AH violated or "mismanaged".  This is insufficient to state a claim under the NDAA. ("Plaintiff does not address a rule or law that she believed was being violated…This

> specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract... or grant."
>
> 41 U.S.C. § 4712

The following elements are required for the NDAA to provide an employee protection: (1) the employee must "reasonably believe [s]he was disclosing evidence" described by the statute, (2) the allegedly protected disclosure must have been made to a covered person or body, and (3) "the protected disclosure was a 'contributing factor' to an adverse personnel action.'" McCane v. Sch. Dist. of Pasco Cty., No. 8:18-CV-1559-T-36AAS, 2020 WL 495219, at *5 (M.D. Fla. Jan. 30, 2020) (citing Pritchard v. Metro. Wash. Airports Auth., No. 1:18-cv-1432 (AJT/TCB), 2019 WL 5698660, at *12 (E.D. Va. Nov. 4, 2019), *appeal filed*, No. 19-2386 (4th Cir. Dec. 5, 2019)).

However, courts have routinely held that "[M]ere differences of opinion between an employee and [her] superiors as to the proper approach to a particular problem or the most appropriate course of action do not rise to the level of gross

---

is simply not sufficient to meet the pleading standard or state a claim. Accordingly, Plaintiff's NDAA claim will be dismissed. McCane at *5.

mismanagement." Busselman v. Battelle Mem'l Inst., No. 4:18-CV-05109-SMJ, 2018 WL 10374692, at *6 (E.D. Wash. Oct. 10, 2018) (citing White v. Dep't of Air Force, 391 F.3d 1377, 1381 (Fed. Cir. 2004)).  "[W]here a dispute is in the nature of a policy dispute, 'gross mismanagement' requires that a claimed [federal contractor] error in the ... continued adherence to ... a policy be a matter *that is not debatable among reasonable people*." Id. at 1383.  (Emphasis added).

Yet, throughout the 194 paragraphs of Plaintiff's Complaint, she alleges that exactly *zero* "reasonable" people agreed with her perception of Ms. Buell's decisions.  According to Ms. Fuerst, these individuals had no shortage of opportunities.  Ms. Fuerst claims that she ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Compl. ¶ 94).  To the extent Ms. Buell's ▆▆▆▆▆▆ ▆▆▆▆▆▆ was truly objectionable, and not debatable, one would expect that at least one "reasonable" member of the Investment Committee would have agreed. However, Ms. Fuerst makes no such allegation.

Similarly, it appears that Ms. Fuerst made AH's General Counsel, Paul Vranicar, aware of her misgivings as to Ms. Buell and her decisions. During a meeting with Mr. Vranicar and Ms. Buell, Ms. Fuerst alleges that she told Ms. Buell that ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████ (Compl. ¶ 105). Yet again, Ms. Buell never alleges that Mr. Vranicar concurred with this assessment or otherwise supported her comments.

Then, in another Investment Committee Meeting, Fuerst ████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████ (Compl. ¶¶ 108, 113). She alleges that ██████████ ███████████████████████████████████████████████ ██████████████████████████████ (Compl. ¶ 109). However, she does not allege that Mr. Wilson, or *anyone else on the Committee*, actually agreed that ███ ███████████████████████████████████████████████ ███ constituted "gross mismanagement" or an "abuse of authority." Id.

Ms. Fuerst's criticism extended to others besides Ms. Buell.  Ms. Fuerst refers to comments from Cecilia Taylor, AH's public relations specialist, that described the 2011 amendments in "blatantly misleading" and "shocking" terms.  (Compl. ¶ 123).  Ms. Fuerst alleges that this description was so "shocking" that it caused the HR Director to "audibly gasp" in response.  Apparently the HR director could not muster further disagreement, or at least, Ms. Fuerst never alleges that he did so.

All of this leads to the inevitable conclusion that Ms. Fuerst simply disagreed with Ms. Buell's, and seemingly the entire Authority's decision, to ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  As noted above, the NDAA's provisions do not protect subordinate employees who merely disagree with their superiors.  AH submits that, if anything, Ms. Fuerst exhibited deep seeded personal animus towards Ms. Buell, not protected disclosures under the NDAA.  These personal issues caused Ms. Fuerst to (vehemently[7]) disagree with Ms. Buell's decisions.  However, the NDAA does not make such disagreements actionable.

**B.  Plaintiff fails to state a claim under the National Defense Authorization Act, because, even if she did make a protected**

---

[7] A worker invoking an anti-retaliation statute is not "insulated from the consequences of insubordination or poor performance." Nifong v. SOC, LLC, 234 F. Supp. 3d 739, 756 (E.D. Va. 2017) (citing Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008)(Title VII context)).

**disclosure, she did not make it to an individual authorized to receive it.**

In order to have protection under the NDAA, Ms. Fuerst would have needed to report her complaints to a "required person." The NDAA defines a "required person" as a "management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct." Pritchard v. Metro. Washington Airports Auth., No. 118CV1432AJTTCB, 2019 WL 5698660, at *14 (E.D. Va. Nov. 4, 2019) citing 41 U.S.C. § 4712(a)(2)(G).

To be sure, Ms. Fuerst appears to claim that she voiced her disagreement to anyone that would listen. However, the Complaint does not allege that any of these individuals would have had the responsibility to investigate her allegations or address allegations of misconduct. If anything, Ms. Fuerst appears to assert that she primarily complained to the individuals she believed to be guilty of "gross mismanagement" themselves.

Statutes similar to the NDAA have found this insufficient to invoke protection. "The [Defense Contractor Whistleblower Protection Act] contemplates a disclosure being made to a person or entity with oversight responsibility, such as a "Member of Congress, ..., an Inspector General, [or] the Government

Accountability Office." Quinn v. Booz Allen Hamilton, Inc., No. 3:14CV111/MCR/EMT, 2015 WL 11347589, at *4 (N.D. Fla. Mar. 6, 2015) (citing 10 U.S.C. § 2409(a) (2008)). Nothing in the statute indicates that it protects "disclosures" made directly to the alleged wrongdoer. Id.

Ms. Fuerst voiced her disagreement to Ms. Buell, Mr. Vranicar and the members of the Investment Committee. However, Ms. Fuerst ostensibly alleges that all of these individuals are "wrongdoers" and perpetrators of gross mismanagement. Ms. Fuerst does allege that she voiced her disagreement to AH's "HR Director." (Compl. ¶ 26, et seq.) However, for whatever reason, Ms. Fuerst never specifies this individual's name, and/or whether this individual had "the responsibility to investigate, discover, or address misconduct." See Pritchard. Unless or until Ms. Fuerst actually names this individual, and can demonstrate his/her responsibility to investigate, discover, or address misconduct of the CEO, General Counsel and the Investment Committee or indicates another individual to whom she complained that would qualify as a "required person," her claims should be dismissed.

**C. The NDAA does not apply because the agreements at issue are between Integral and AH, not between AH and the federal government.**

Ms. Fuerst invokes the NDAA to protect her from complaining about a private company's contract(s) with AH. However, courts have held that the NDAA does not apply to such claims. As discussed in Armstrong v. Arcanum Grp. Inc., No. 16-CV-1015-MSK-CBS, 2017 WL 4236315 (D. Colo. Sept. 25, 2017), aff'd sub nom. Armstrong v. The Arcanum Grp., Inc., 897 F.3d 1283 (10th Cir. 2018), "The NDAA and its anti-reprisal provisions pertain only to contracts between the federal government and private contractors." There, the court specified that a contract between the Bureau of Land Management ("BLM") and another governmental agency could not form the basis for an NDAA claim. Instead, the plaintiff in Armstrong claimed to have reported fraud related to a contract between her employer, a private staffing agency, and the BLM. The court reasoned:

> Although § 4712 is relatively new and the Court can find no case law applying or interpreting it, it is clear that § 4712 was enacted to enhance the protections of § 4705 of the Act, entitled "Protection of contractor employees from reprisal for disclosure of certain information." § 4712 does not define the term "federal contract", but § 4705 clearly does—it is the contract awarded by the head of an executive agency to a contractor. The contractor is the person to whom the contract is awarded. 41 U.S.C. § 4705(a)(1)–(2). Thus, the protections of § 4712 and § 4705 apply to conduct involving a disclosure of rule violations related to contracts between the federal government and private contractors. In this case, that would be the contract between TAG and the BLM.

> Because Ms. Armstrong's comments were not directed at that contract, but instead intra-government contracts, she has no claim under the NDAA.
>
> Id. *7–8 (D. Colo. Sept. 25, 2017)

The same reasoning applies to AH and Integral. The Integral/AH contract/agreements are not "federal contracts" under the statute. As such, any complaints made by Ms. Fuerst about AH's contract with Integral would not implicate the NDAA and her claims should be dismissed.

## V. Conclusion

Ms. Fuerst's reading of the NDAA would vitiate the concept of at will employment for AH. Through her choice of words in her Complaint, Ms. Fuerst essentially admits that she conducted an open campaign of insubordination and voiced her disagreements with Ms. Buell openly and frequently. Ms. Fuerst now seems surprised that this constant criticism and attempts to undermine Ms. Buell ultimately resulted in her termination.

Perhaps more glaringly, Ms. Fuerst frequently touts her own abilities and describes her "deep legal knowledge about mixed-income housing developments," "her decades of knowledge about the business of housing development and finance," and claims that she was "frequently called upon to guide and train her colleagues in

these areas, *in addition to providing legal counsel*." (Compl. p. 6, fn. 4 (emphasis added)). It will suffice to say that Ms. Buell did not ask for, much less require, Ms. Fuerst's guidance or training. Instead, Ms. Buell listened to a variety of opinions as to AH's contracts with Integral and made her own decisions. Ms. Fuerst's mere disagreement with these decisions is not actionable under the NDAA and her claims should be dismissed.

Respectfully submitted this 20th day of July, 2020.

                                            s/ *Brent L. Wilson*
                                            Brent L. Wilson
                                            Georgia Bar No. 767667
                                            Mason Wymer
                                            Georgia Bar No. 256026
                                            Megan L. Quinn
                                            Georgia Bar No. 625272

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
Telephone: (404) 659-6700
Facsimile: (404) 222-9718
bwilson@elarbeethompson.com
wymer@elarbeethompson.com
quinn@elarbeethompson.com

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| KAREN FUERST, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | 1:20-cv-02027-MHC |
| THE HOUSING AUTHORITY ) | |
| OF THE CITY OF ATLANTA, ) | |
| GEORGIA, ) | |
| ) | |
| DEFENDANT. ) | |
| _____ ) | |

**<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing has been prepared with Times New Roman 14-point font, which is one of the font and point selections approved by the Court in LR 5.1B.

This 20th day of July, 2020.

                                                s/ J. Mason Wymer
                                              J. Mason Wymer
                                              Georgia Bar No. 256026

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303

404/659-6700
404/222-9718 (facsimile)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KAREN FUERST, )<br>)<br>PLAINTIFF, )<br>)<br>v. )<br>)<br>THE HOUSING AUTHORITY )<br>OF THE CITY OF ATLANTA, )<br>GEORGIA, )<br>)<br>DEFENDANT. )<br>_____ ) | CIVIL ACTION NO.:<br>1:20-cv-02027-MHC |

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2020, I served the foregoing **Defendant's Memorandum in Support of its Motion to Dismiss** via electronic mail to the following:

>Halsey G. Knapp, Jr.
>Barclay S. Hendrix
>1201 W. Peachtree Street NW
>Suite 3250, One Atlanta Center
>Atlanta, Georgia 30309
>(404) 888-9700
>hknapp@khlawfirm.com
>hendrix@khlawfirm.com

          s/J. Mason Wymer
          Brent L. Wilson
          Georgia Bar No. 767667
          Mason Wymer

                                            Georgia Bar No. 256026
                                            Megan L. Quinn
                                            Georgia Bar No. 625272

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
Telephone: (404) 659-6700
Facsimile: (404) 222-9718
bwilson@elarbeethompson.com
wymer@elarbeethompson.com
quinn@elarbeethompson.com

*Attorneys for Defendant*